# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | 3:12-CR-19-RCJ-WGC |
| KENDRA DAVIDSON, ) | **ORDER** |
| Defendant. ) | |

Currently before the Court is Defendant Kendra Davidson's Motion to Suppress Evidence Seized from Search Warrant Execution Together with Fruits Derived Therefrom (#34). The Court heard oral argument on August 1, 2012.

## BACKGROUND

**I.    Indictment**

In February 2012, a federal grand jury indicted Defendant Kendra Davidson on one count of possession of counterfeit obligations of the United States in violation of 18 U.S.C. § 472. (Indictment (#1) at 1).

**II.    Police Report**

During the week of October 31, 2011, Detective Charles Bluth of the Department of Public Safety Investigation Division, All Crimes Task Force in Washoe County, received information from a deactivated cooperating individual ("CI") that a "Kendra," residing at a specified address, was involved in the sale of marijuana and counterfeiting U.S. currency. (Bluth Report (#34) at 14). The CI stated that "Kendra" was conducting business from her residence and was driving a blue Volkswagen Jetta. (*Id.*). Prior to conducting surveillance,

Bluth identified "Kendra's" residence and the Blue Jetta and found that the registration attached to the Blue Jetta did not belong to the Jetta but rather a 1995 Chevrolet 4 door registered to a Kendra Davidson. (*Id.*).

On November 4, 2011, Bluth conducted surveillance on the Kendra Davidson residence even though the Jetta was not at the location. (*Id.*). Bluth located Kendra driving toward her residence in the Blue Jetta with the fictitious registration. (*Id.*). As Kendra passed Bluth, Bluth pulled in behind her in the drive way with his unmarked patrol vehicle. (*Id.*). He activated his lights and was wearing a tactical vest that clearly stated "Police" and "Sheriff." (*Id.*). After he explained the traffic stop, she said she knew the plates did not belong on the vehicle and said the plates were off the vehicle next to them, a blue Chevrolet 4 door with no registration parked in the driveway. (*Id.*).

Upon request, Kendra exited her vehicle and another detective arrived on the scene. (*Id.*). While Bluth and Detective Krush talked to Kendra, Kendra "admitted to possessing 1/8 ounce Marijuana in her vehicle" and "admitted to possessing a small amount of Marijuana in her residence." (*Id.*). She also stated that her boyfriend, Jeremy Dolinski, was a Nevada Medical Marijuana Patient and that he used to grow marijuana in a shed in the rear of the residence. (*Id.*). Kendra stated that Dolinksi was in Humboldt, California, "trimming," or marijuana harvesting. (*Id.*). Kendra stated that she was not a medical marijuana patient. (*Id.*). Kendra stated that they could not search her vehicle without a warrant. (*Id.*).

When Deputy Jones and his K-9, Pasha, arrived on the scene, Pasha positively indicated the presence of a drug odor coming from within the vehicle and coming from within the residence. (*Id.*). Based on the positive indication, Bluth applied for a search warrant for both the vehicle and the residence. (*Id.*). Judge Scott Pearson found that probable cause did exist for a search warrant. (*Id.*). During the execution of the search warrant, the detectives found a small amount of marijuana in the vehicle and a large amount of marijuana in Kendra's residence in addition to methamphetamine, packaging material, and drug paraphernalia. (*Id.* at 14-15). Bluth read Kendra her *Miranda* rights and she agreed to talk to him. (*Id.* at 15). Kendra admitted to possessing a few counterfeit one hundred dollar bills and directed the

detectives to their location. (*Id.*). Based on the counterfeit monies and Kendra's admissions, Bluth applied for an additional search warrant for the computers, printers, and other related electronic devices that could be used to produce counterfeit monies. (*Id.*). Judge Pearson found that probable cause existed for the second search warrant. (*Id.*).

On November 7, 2011, Bluth contacted the Nevada Medical Marijuana Board and confirmed that Dolinksi was an active medical marijuana participant. (*Id.*). Detectives also located the shed that had been used as a marijuana grow operation. (*Id.*).

### III.     Transcript of First Search Warrant Application

On November 4, 2011, Bluth applied for a search warrant application with Judge Pearson over the telephone. (Transcript (#35) at 9-10). Bluth stated that he had probable cause to believe that Kendra Davidson was committing the crime of possession of a controlled substance, a felony violation of NRS § 453.336, and that evidence of the crime was presently located, concealed, and/or hidden within her residence and its surrounding premises and in a 1997 Volkswagen 4-door passenger car located at the same address. (*Id.* at 10).

Bluth told Judge Pearson that he believed he had probable cause for a search warrant because  (1) he had received a call from a former signed CI who indicated that a female named "Kendra" was selling marijuana and had given Bluth her address; (2) when Bluth did a records check on one of the vehicles he found that the registration was fictitious and that the registration did come back to an individual named Kendra for a Chevy 4-door sedan but noted that the registration was attached to a Volkswagen; (3) during surveillance, he conducted a traffic stop on the Volkswagen when it pulled up into the residence's driveway; (4) the driver was Kendra who stated that she knew the registration was fictitious; (5) during conversations outside of the car, Kendra admitted to having marijuana both in her vehicle and in her residence; and (6) after Kendra denied consent to search, a K-9 dog indicated positive alerts on both the vehicle and the front door of the residence. (*Id.* at 10-11). Bluth also stated that Kendra had told him that her boyfriend had grown marijuana in one of the back sheds on the residence in the past. (*Id.* at 11-12). After listening to the K-9 dog's certification and training, Judge Pearson found probable cause for a search warrant and granted the search warrant.

(*Id.* at 12-13).

## DISCUSSION

Defendant Kendra Davidson ("Defendant") moves to suppress all evidence seized and obtained, both directly and indirectly, including statements and tangible evidence, from the execution of the search warrant on November 4, 2011. (Mot. to Suppress (#34) at 1). Defendant argues that Bluth intentionally or recklessly omitted to tell the judge during the telephonic application for the search warrant that a person residing in the residence to be searched possessed a valid state medical marijuana card. (*Id.* at 3). Defendant seeks a *Franks* hearing. (*Id.* at 5-6). Defendant argues that Bluth obtained a search warrant on her house based on probable cause that she had violated NRS § 453.336 by possessing a controlled substance. (*Id.* at 7). However, Defendant argues that the existence of her boyfriend's medical marijuana card would have negated probable cause. (*Id.* at 8).

In response, the government asserts that Defendant has not met her burden for a *Franks* hearing because probable cause would not have been negated with the inclusion of the medical marijuana card because Bluth had information from a CI that Kendra was selling marijuana from that address, Defendant had a fictitious registration, Defendant admitted that she possessed marijuana in both her vehicle and her residence, the dog alerted on both the vehicle and the residence, and Defendant admitted that her boyfriend used to have a marijuana grow in one of the back shed's of the residence. (Opp'n to Mot. to Suppress (#35) at 3-4). The government asserts that the fact that Defendant's boyfriend had a medical marijuana card was not a material omission to determine that Defendant possessed marijuana in violation of NRS § 453.336. (*Id.* at 4). The government asserts that Defendant's boyfriend's card does not permit her to legally possess marijuana under state law. (*Id.*).

In reply, Defendant asserts that the government cannot rely on an anonymous informant for the probable cause analysis. (Reply to Mot. to Suppress (#36) at 2).

"A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions,

4

and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). "If inclusion of the omitted facts would not have affected the probable cause determination, no *Franks* hearing is required." *Id.* Probable cause exists when a judge finds that, "considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found." *Id.* at 1046 (internal quotations and alterations omitted). To support a request for a *Franks* hearing, a defendant must present "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 268457 L. Ed. 2d 667 (1978).

In this case, the inclusion of Dolinski's medical marijuana card would not have negated probable cause. First, Bluth did not solely rely on the former CI to establish probable cause in this case. *See Franks*, 438 U.S. at 165, 98 S.Ct. at 2681 (holding that "[i]f an informant's tip is the source of information, the affidavit must recite 'some of the underlying circumstances from which the informant concluded' that relevant evidence might be discovered, and 'some of the underlying circumstances from which the officer concluded that the informant, . . .was 'credible' or his information 'reliable.'"). Instead, Bluth conducted his own surveillance on Defendant, did a registration check, and found that he had a legitimate reason to conduct a traffic stop due to her fictitious registration. Second, Defendant herself admitted that *she* had marijuana in the car and in her residence. Third, the K-9 alerted to drugs both in the vehicle and at the front door of the residence. As such, there was enough facts to conclude that probable cause existed that Defendant possessed marijuana in both her vehicle and in the residence. Additionally, even if Bluth had stated that Defendant's boyfriend had a medical marijuana card, Defendant herself admitted to Bluth that she possessed the marijuana. *See* Nev. Rev. Stat. § 453.336(1) (stating that "[a] person shall not knowingly or intentionally possess a controlled substance, unless the substance was obtained directly from, or pursuant to, a prescription or order of a physician, physician assistant licensed" under the statutes). As such, the omission would not have changed the probable cause determination and the Court denies the request for a *Franks* hearing and the motion to suppress (#34).

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendant's Motion to Suppress (#34) is DENIED.

Dated this 1st day of August, 2012.

_____
United States District Judge